# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3085 | **DATE** | 3/17/2003 |
| **CASE TITLE** | | SEC vs. Collins | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies the SEC's motion for summary judgment against David Morgenstern (82-1). Morgenstern's motion in opposition to the SEC''s summary judgment motion (94-1), which is really just a response brief, is terminated. Parties waive evidentiary hearing on relief to be awarded against Coppage and Wilson. Court will rule by mail. Telephone conference set to 3/25/03 at 9:00 a.m on claims against Morgenstern.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 17 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| OR | courtroom deputy's initials | 03 MAR 18 PM 4:57 | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) Plaintiff, ) ) vs. ) ) RICHARD J. COLLINS, d/b/a Capital ) Investment Concepts, Ltd., Cutting Edge ) Marketing, Light of the World, and ) Midwest Financial Funds; BILL WILSON; ) JEROME COPPAGE; THE GATEWAY ) ASSOCIATION; and THE GATEWAY ) ASSOCIATION (ILLINOIS), ) ) Defendants, ) ) and ) ) DAVID MORGENSTERN; WILLIAM J. ) WINDSOR; LINDA A. FEHL; MALCOLM ) SILVERMAN; JANET COLLINS; and ) CHRISTINE TODD, ) ) Relief Defendants. ) | Case No. 01 C 3085 |

DOCKETED
MAR 1 9 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The defendants in this securities fraud case bilked investors out of millions of dollars through a fictitious "prime bank" investment program known as The Gateway Association Inc. that promised huge profits. The SEC sued the scheme's mastermind, Richard J. Collins, and his henchmen, along with certain "relief defendants," people who are not alleged to have done anything wrong, but who are claimed to have taken possession of investor funds. The SEC alleges that these relief defendants have no rightful claim to the money, and, as part of its effort

to recover and return money to the defrauded investors, it seeks disgorgement of the fraudulently-obtained funds placed within the relief defendants' control. *See* Complaint ¶4; *id.* ¶VII of request for relief. The SEC has moved for summary judgment against one of the relief defendants, David Morgenstern, who appears *pro se*.

Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In its motion, the SEC seeks disgorgement from Morgenstern in the amount of $1,700,000, plus interest. To obtain such relief, the SEC must show that Morgenstern, who, at least in this case, is not accused of wrongdoing, "(1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." *SEC v. Cavanaugh*, 155 F.3d 129, 136 (2d Cir. 1998).

As to the first element, the SEC alleges that between May 14, 1998 and May 27, 1998, $2,428,250 in defrauded investor funds were deposited into two accounts held in the name of The Gateway Association Inc. at Bank Atlantic and First Union Brokerage Services, Inc. Morgenstern was a signatory on both of these accounts, which indicates that he had at least some control over the money in them. Between May 27, 1998 and June 8, 1998, $2,279,812.83 was transferred out of those two accounts and into an account held in the name of The Gateway Association Inc. at Bank of America. Morgenstern was not a signatory on the Bank of America account, but the bank statements were sent to the same address as the other two accounts. There is no other evidence to suggest that Morgenstern had any control over the Bank of America account, but, as we will see, that is of little consequence. On June 8 and 9, 1998, $1,700,000 was

2

transferred from the Bank of America account to an account at Midland Bank in London held in the name of Americas Fidelity Capital Management Ltd. Morgenstern was the executive director of AFCM and the "beneficiary" of this account. Although the SEC does not define this term, the Court assumes that it means something similar to signatory and implies some degree of control over the funds in the account. Based on these facts, which the SEC has established through an affidavit from Norman Jones, an accountant with the SEC's enforcement division, the Court is persuaded that Morgenstern received ill-gotten funds.[1] Indeed, Morgenstern concedes as much. *See, e.g.*, Morgenstern's opposition brief, p. 8 (where Morgenstern acknowledges receipt of investor funds but disputes the amount claimed by the SEC; he claims he received a much *greater* amount of money); *id.*, p. 10 (admitting receipt of at least $1,700,000). Morgenstern also concedes that he had no legitimate claim to these funds. *See id.*, p. 10 ("[Morgenstern] has also never claimed that these funds were his.").

Before turning to the merits of Morgenstern's response to the SEC's motion, we note that, along with its motion, the SEC served Morgenstern with the appropriate notice to a *pro se* party as required by Local Rule 56.2. Despite this notice, Morgenstern's Local Rule 56.1 statement does not comply with the local rules. Rather than responding to the numbered paragraphs in the SEC's statement, Morgenstern for the most part responded to the numbered paragraphs in Jones' affidavit, which was cited extensively in and attached to the SEC's Local Rule 56.1 statement. Because of this, the SEC asks the Court to strike Morgenstern's response and deem all facts admitted. We decline to do so. To the extent Morgenstern's statement fails to comport with the

---

[1] The SEC's summary judgment papers also establish that the funds were obtained from investors by fraud; Morgenstern, who is not claimed to have defrauded any investors, does not dispute this.

technical niceties of the rule, we will excuse the failure because he is *pro se* and because the Court is able to discern quite easily which paragraphs of the SEC's 56.1 statement Morgenstern disputes (paragraphs 2 and 33 - 36); to borrow the SEC's phrase, we had no trouble finding "the peanut." The remaining paragraphs (paragraphs 1 and 3 - 32) are deemed admitted.

We turn to the substance of the motion and response. As we said, Morgenstern admits that he received at least $1,700,000 from Gateway and/or Collins. He also admits that he has no legal claim to this money. Morgenstern contends, however, that he returned all of this money to Gateway, plus interest. As the Court understands his argument, Morgenstern claims that he transferred money from AFCM's Midland Bank account to a bank account in Switzerland in the name of Slattocks Invest S.A. He then transferred money from the Slattocks account to an account at Americas International Bank Corporation in the Bahamas in the name of Americas Fidelity Reliance Company. He claims that Collins and Gateway controlled the AFRC account. Morgenstern therefore claims that he has provided "credible evidence that these funds were returned to Gateway, and at least in part, to Gateway investors." Opposition brief, p. 10.

Bank statements for AFCM's Midland Bank account confirm the $1,700,000 coming into the account in two deposits (one on June 9, 1998 in the amount of $1,100,000 and one on June 10, 1998 in the amount of $600,000). They also confirm an $8,100,000 debit on August 26, 1998. Documents from the Canadian Imperial Bank of Commerce (Suisse) appear to confirm that Slattocks received a credit of a little less than $8.1 million on August 27, 1998; the notation on the credit notice shows that the money came from AFCM. The CIBC documents also show that on December 16, 1998 Slattocks transferred a little over $2.5 million to AIBC, though the pertinent CIBC document is somewhat ambiguous in that it indicates that the transfer was made

4

"in favor of AFCM," that is, the entity that appears to have been Morgenstern's company. And it is difficult from the records submitted by Morgenstern to trace the funds into AFRC's account at AIBC or to say definitively who that account belonged to.

Beyond the bank documents, the record also contains an affidavit signed by Richard Collins, the mastermind behind the Gateway scheme, stating

> [t]hat between April 1998 and October 1998, Gateway, by myself, deposited into accounts controlled by AFCM, to Gateway's order, the sum total of $2,346,000 ("the Said Funds"). The Said Funds, with interest thereon, in the amount of $422,280 were returned in full to myself under my instructions on an incremental basis, from September 1998 through to November 1999.

Affidavit of Richard J. Collins, March 6, 2000. Although the dates Collins references do not jibe with the dates on the bank records discussed above, the affidavit nonetheless supports Morgenstern's story to some extent in that it says he returned (to Collins) all of the money Gateway entrusted to him to invest on its behalf. Also in the record is a declaration from Morgenstern, which states that he returned all of the investor money to Collins and Gateway. This evidence is sufficient to create an issue of fact on the question of whether Morgenstern returned the ill-gotten funds. Certainly it calls into question Jones' statement that although lots of money was transferred out of the Midland Bank account, "[n]one of these transfers served to send money back to *anyone associated with The Gateway Association*, or to any investors in The Gateway Association." Jones Affidavit, ¶14 (emphasis added).

We recognize that returning money to Collins is not the same as returning money to the defrauded investors. And it may not even be the same as returning the money to the Gateway Association. Even if Morgenstern thought The Gateway Association was a legitimate program, and even if he thought Collins obtained the investor money legitimately, his handing over those

funds to Collins personally could suggest some involvement in the underlying wrongdoing or a separate defalcation on Morgenstern's part. But based on the way the SEC has pled its case and the theory on which it seeks summary judgment, what is significant is that Morgenstern genuinely disputes the SEC's claim that he is holding investor funds.

The question remains whether Morgenstern's alleged transfer of the money has any bearing on the SEC's summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact). The test for awarding equitable relief against relief defendants says nothing about continued possession of the money. Specifically, *SEC v. Cavanaugh* requires the SEC to show that the relief defendant *received* ill-gotten funds; it does not specifically require the SEC to show that he still has the money. But given the nature of the claim against a relief defendant -- which alleges no securities law violations and claims only that the defendant is the repository of ill-gotten funds – possession of the money would seem to be a necessary component of an order requiring him to disgorge the money.

The SEC did not cite, and the Court could not find, any case involving a relief defendant who claimed to have returned or disposed of the money. The typical relief defendant is a trustee or a bank, which has received the ill-gotten funds from the person who actually committed the securities violations and holds those funds in a custodial capacity only; the typical relief defendant cares little who ultimately gets those funds. *See SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991); *SEC v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998). Certainly in such cases, present possession is assumed or established. We can hardly imagine a situation in which the SEC goes

after a bank to recover money it no longer holds, and indeed, the SEC has not named in this lawsuit Bank Atlantic, First Union, Bank of America, Midland Bank, or any of the other banks it knows held ill-gotten funds at some point.

This is not to suggest that a bank, trustee or other person typically afforded relief defendant status is necessarily immune from suit once it releases the ill-gotten funds. We can certainly envision a case in which a recipient of investor funds knowingly helps further the underlying scheme or, as indicated earlier, commits a defalcation of his own by releasing the funds to someone other than the depositor. But in such a case, the SEC presumably would proceed against the trustee as a claim defendant, not as a relief defendant. *See Cherif*, 933 F.2d at 415 (if the relief defendant helped carry out the fraudulent scheme, it might be appropriate to name him outright as a defendant). And in any event, the SEC has not alleged that Morgenstern released ill-gotten funds to Collins knowing that Collins was going to convert the investor funds to his own use; instead, the SEC has argued that Morgenstern never returned the money to anyone associated with Gateway. Thus, under the circumstances of this case, the question of whether Morgenstern returned the money is material to the ultimate question of whether he should be ordered to disgorge any funds.

## Conclusion

The Court finds that Morgenstern's declaration, together with Collins' affidavit and the relevant bank records are sufficient to create a genuine issue of material fact as to whether Morgenstern returned any ill-gotten funds he received and that this issue is enough to defeat the SEC's motion for summary judgment. The Court denies the SEC's motion for summary judgment against David Morgenstern [Docket No. 82-1]. Morgenstern's motion in opposition to

7

the SEC's summary judgment motion [Docket No. 94-1], which is really just a response brief, is terminated.

Dated: March 17, 2003

                                                                                MATTHEW F. KENNELLY
                                                                                United States District Judge